SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
Dorothy M. Weber
Judith A. Meyers
Joseph M. Conley
494 Eighth Avenue, Suite 600
New York, NY  10001
(212) 245-4580
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

EXPERIENCE HENDRIX, L.L.C., a
Washington Limited Liability Company, and
AUTHENTIC HENDRIX, LLC, a Washington
Limited Liability Company,

                    Plaintiffs,

    -against-

KARL FERRIS, an individual, and OPTIVE
MARKETING, INC., a Minnesota Corporation,

                    Defendants.
-------------------------------------------------------------------x

Case No.:

**JURY TRIAL DEMANDED**

**<u>COMPLAINT</u>**

Plaintiffs Experience Hendrix, L.L.C., and Authentic Hendrix, LLC, by their attorneys, Shukat Arrow Hafer Weber & Herbsman, LLP, for their Complaint herein against Karl Ferris and Optive Marketing, Inc. (collectively, "Defendants"), allege as follows:

<u>**SUMMARY OF CLAIMS**</u>

This action arises from Defendants' attempts to improperly exploit the intellectual property rights of one of the greatest artists in the history of Rock and Roll music, Jimi Hendrix. Plaintiffs, Experience Hendrix, L.L.C. and Authentic

Hendrix, LLC, are the successors-in-interest to the Hendrix Estate, and bring this action under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, trademark infringement, deceptive acts and practices under New York Law, and various other state and federal claims, seeking equitable relief and damages based on Defendants' unauthorized use and exploitation of intellectual property rights owned exclusively by the Plaintiffs.

## THE PARTIES

1.      Plaintiff Experience Hendrix, L.L.C. ("Experience") is a limited liability company established under the laws of the State of Washington.  Plaintiff Experience is the assignee of and sole owner of the copyrights and trademark rights owned by Jimi Hendrix and is the proprietor of the intellectual property rights relating to a vast catalog of musical compositions and sound recordings created by the late Jimi Hendrix.

2.      Plaintiff Authentic Hendrix, LLC ("Authentic") is a limited liability company established under the laws of the State of Washington.  Plaintiff Authentic is the worldwide licensing arm of Experience.

3.      Defendant Karl Ferris is a photographer and, on information and belief, currently resides in Ibiza and lists his United States address as c/o Erik McLain, Esq., Irvine, California.

4.      Defendant Optive Marketing, Inc., is a Minnesota Corporation with its principal place of business located at 4177 Shoreline Drive, Spring Park, Minnesota 55384.  On information and belief, Cheri Louck, is the President and an owner of

Optive Marketing, Inc., and directs and controls the infringement and profits from them.   On information and belief, Patrick Charbonneau is an owner of Optive Marketing, Inc. and directs and controls the infringement and profits from them.

## JURISDICTION AND VENUE

5.   Plaintiffs bring this suit against both Defendants seeking damages and injunctive relief as a result of trademark infringement under the trademark laws of the United States, namely, Title 15 of the United States Code, 15 U.S.C. §§ 1114, 1125 and 1116-1118, inclusive; 15 U.S.C. §§1051 *et seq.* ("Lanham Act"); for trademark infringement and deceptive acts and practices under New York Law; and various other state and federal claims.

6.   This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367, as the claims herein arise under the provisions of the Lanham Act, 15 U.S.C. §1121.

7.   This Court has supplemental jurisdiction over Plaintiffs' state law claims arising under the statutory and common law of the State of New York pursuant to 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal law. The Court also has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1367, because Plaintiffs' state law claims are interrelated with Plaintiffs' federal claims and arise from a common nucleus of operative facts such that the adjudication of Plaintiffs' state law claims with Plaintiffs' federal claims furthers the interest of judicial economy.

8.     This Court has personal jurisdiction over each of the Defendants who, on information and belief, have maintained systematic contacts with the State of New York, have transacted business within the State of New York (e.g., advertised, marketed, sold, and/or shipped its products, including, but not limited to, the infringing products discussed below, to New York residents, including, but not limited to, those within the venue of this Court), and/or have travelled in and to the State of New York to commit acts that have caused tortious injury to Plaintiffs in this Judicial District pursuant to New York's long-arm statute, N.Y.C.P.L.R. §§ 301 and 302.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c).

## I.     PLAINTIFFS' FAMOUS, STRONG AND INCONTESTABLE TRADEMARKS AND COPYRIGHTS

### A.     Hendrix Companies' Design Marks and Trademarks

10.     Over the past two decades, the Plaintiffs have carefully developed a licensing program around their Jimi Hendrix-related trademarks and copyrights, in connection with "Jimi" and his legacy, and have endorsed and licensed a range of products, which all must meet the standards of the Hendrix Companies and a stringent approval process. Plaintiffs license the use of the Jimi Hendrix trademarks and copyrights from a vast collection of copyrighted music, photographs and album covers. Plaintiffs' licensing and endorsement efforts encompass a wide variety of products such as t-shirts, Fender guitars, Dunlop guitar effects pedals, Pepsi Cola, Chanel, Tag Heuer watches, the Jimi Hendrix Park Foundation, the Experience

Hendrix Tour, and Rock Band Video Games. Plaintiffs also endorse traditional merchandise, such as posters, prints, calendars, and other products.

11.    Since 1996 or earlier, the Hendrix Companies have used federally registered and common law trademarks, service marks, trade names and logos to identify Jimi Hendrix related promotional merchandise and services to the general consuming public through catalog sales, Internet websites, retail stores, and licensee sales. These are famous marks and widely recognized by the general public. Attached as **EXHIBIT A** is a list of registrations. The Plaintiffs also own the copyrights in the musical works and copyrights of Jimi Hendrix at issue in this case.

12.    The marks owned and used by the Hendrix Companies include, but are not limited to the following:  "JIMI HENDRIX ®", "THE JIMI HENDRIX EXPERIENCE ®", "HENDRIX ®", "EXPERIENCE HENDRIX ®", "AUTHENTIC HENDRIX ®", and the design marks of the signature of Jimi Hendrix, and an image (head or bust) of Jimi Hendrix, such as the following:







13.     Plaintiff Experience owns word, design, and composite marks, which are registered on the Principal Register of the United States Patent and Trademark Office (hereinafter, "USPTO"), and are incontestable pursuant to 15 U.S.C. §1065. Plaintiffs have pending applications for JIMI HENDRIX in Class 35 for online retail services. Collectively, these marks shall be referenced herein as the "Hendrix Marks." A copy of Plaintiffs' registered marks are attached hereto as **EXHIBIT A**.

14.     Plaintiffs and their authorized licensees have made continuous, substantial and vigorous use and promotion of the Hendrix Marks in the marketplace, as well as other unregistered marks and indicia relating to Jimi Hendrix.  Through substantial sales and promotion of goods and services under the Hendrix Marks, Plaintiffs are the recognized official source of Jimi Hendrix-related

goods and services, and the Hendrix Marks are valuable and recognized symbols of Plaintiffs' goodwill.  Plaintiffs' Hendrix Marks are famous and well-known by consumers throughout the United States and, indeed, the world.

15.     Through substantial and continuous sales and promotion of goods and services, the Plaintiffs have been the recognized source of Jimi Hendrix-related goods and services. The Plaintiffs' Hendrix Marks are well-known by consumers throughout the United States and elsewhere and continuously enforce their marks globally.

16.     Additionally, by Plaintiffs' sponsorship and promotion of charitable and educational events and private touring music, art, and multimedia events emphasizing the cultural and artistic legacy of Jimi Hendrix, the Plaintiffs' companies have associated their marks with Jimi Hendrix's innovative spirit and musical and artistic talent.

17.     The consuming public has come to identify the Hendrix Marks with the Plaintiffs, as the sole successors-in-interest to the Estate of Jimi Hendrix.

18.     Plaintiffs have successfully distinguished their products and services from unauthorized recordings, merchandise, public domain, and other products and services, by engaging in a significant effort to enforce their rights and remove unauthorized goods and merchandise from the marketplace, and by associating the Hendrix Marks with Plaintiffs' authorized products and services.

19.     The Hendrix Marks, in addition to being strong marks, are also famous as they are widely recognized by the general consuming public of the United States as a designation indicating a single source of goods or services.[1]

20.     Al Hendrix and, subsequently, Plaintiffs decided early in their business model not to license the Hendrix Marks, or Jimi Hendrix music, for use "in the promotion of alcohol, tobacco, illegal or recreational drug products" or for products related to "racist, sexist, hateful, violent, or sexual acts" as set forth in their License Style Guide.

### B.    Hendrix Companies' Ownership of the Photographs and the Album Artwork

21.     Defendant Ferris, in or about 1967, was introduced to singer/guitarist Jimi Hendrix.  At that time, Jimi hired Ferris to work with him to create photographs for the cover of the album "Are You Experienced."  At that time, Ferris shot numerous photographs (the "Photographs") which were ultimately used in the creation of the album artwork for cover art and back cover art for the albums "Are You Experienced" and "Electric Ladyland" (the "Album Artwork").

22.     For fifty (50) years the Plaintiffs and their predecessors in interest have exploited the Album Artwork on a wide variety of products.[2]

---

[1] *See Experience Hendrix, LLC v. Electric Hendrix, LLC*, No. C07-338 TSZ, 90 U.S.P.Q.2d 1883, 2008 WL 3243896, *9 (W.D. Wash. 2008) ("The Court holds that the name Jimi Hendrix is a famous name and that it has acquired a secondary meaning"); *Experience Hendrix, LLC v. Hendrixlicensing.com, Ltd.*, No. C09-285Z, 97 U.S.P.Q.2d 1364, 2010 WL 2104239, *2 (W.D. Wash. 2010).
[2] Ironically, Ferris filed his fraudulent copyright registration using Plaintiffs' album as the deposit copy.

23. Plaintiffs own the copyrights to the Photographs pursuant to English law based upon a work for hire doctrine similar to the work for hire doctrine under the United States copyright code.

24. Plaintiffs own the exclusive rights including, but not limited to, copyrights in and to the "Are You Experienced" Album Artwork, specifically: 1) "Are You Experienced" front cover; and 2) "Are You Experienced" back cover.

25. Plaintiffs own, hold and/or possess exclusive rights including, but not limited to, copyrights in and to the "Electric Ladyland" Album Artwork, specifically: 1) "Electric Ladyland" left side gatefold cover; and 2) "Electric Ladyland" right side gatefold cover.

26. Since 1967, Jimi Hendrix, his record companies, and Plaintiffs have distributed the "Are You Experienced" and "Electric Ladyland" albums and promotional materials, at all times, and have actively, openly and continually exploited the Album photographs on a wide variety of products.[3]

C. **Hendrix Companies' Common Law Trademark Rights in the Hendrix Signature**

27. In addition to their registered trademark in the Jimi Hendrix Signature, the Hendrix Companies have further common law trademark rights in variations of the Jimi Hendrix Signature, as seen above on the "Axis: Bold as Love" album.

---

[3] There is an action pending in the United States District Court for the Central District of California entitled *Karl Ferris v. Experience Hendrix, L.L.C., Authentic Hendrix LLC, and Does 1-10*, Case No. 8:18-cv-872. Defendants are in the process of filing a motion to dismiss or, in the alternative, to transfer venue of that action to the Southern District of New York as a related case.

## II.    PLAINTIFFS' COMMITMENT TO PRESERVING JIMI HENDRIX'S MUSICAL AND CULTURAL LEGACY

### A.    BACKGROUND OF PLAINTIFFS AND THEIR RIGHTS

28.    Jimi Hendrix ("Jimi") was a famous musician, guitar player, and celebrity. Jimi died a resident of the State of New York in 1970. Proceeding for Letters of Administration in *The Estate of James Marshall Hendrix a/k/a Jimi Hendrix* Index No. 5670/1970 was granted September 25, 1970, and subsequent probate proceedings in connection with the Jimi Hendrix Estate were all held in the Surrogate's Court of the State of New York, County of New York. Al Hendrix was Jimi's father and sole heir. In 1995, Al Hendrix founded Experience Hendrix, L.L.C. and Authentic Hendrix, LLC (hereinafter referred to as "Plaintiffs" or "the Hendrix Companies"). Al handpicked Jimi's sister Janie Hendrix, Jimi's cousin Bob Hendrix and certain other family members he wanted to manage those companies. Al expressly excluded Leon Hendrix ("Leon") and his family from that management team.

29.    Al Hendrix and his select family members, through the Plaintiffs, have been singularly committed to preserving Jimi's musical, cultural and artistic legacy. The Plaintiffs have owned, managed, licensed and tastefully marketed Jimi's music, recordings, artistic properties and related merchandise throughout the world. As a result of Jimi's unique talents, and the Plaintiffs' continued stewardship and promotion, Jimi Hendrix and his works, name, and image are famous, and enjoy continuing celebrity status.

30.     Since their inception, Plaintiffs have used copyrights, federally registered and common law trademarks, service marks, trade names and logos to sell Jimi Hendrix related promotional merchandise and services to the general consuming public through catalog sales and Internet websites, retail stores, and licensee sales. The types of goods sold under the various marks and under the authority of the Hendrix Companies are wide-ranging.  The marks owned and used by the Plaintiffs include "JIMI HENDRIX", "THE JIMI HENDRIX EXPERIENCE", "HENDRIX", "EXPERIENCE HENDRIX", "AUTHENTIC HENDRIX", the design marks of the signature of Jimi Hendrix, and an image (head or bust) of Jimi Hendrix.  The Plaintiffs have preserved the Jimi Hendrix legacy and have continuously enforced their copyrights and trademark rights.

31.     Al Hendrix died on April 17, 2002.  In his Last Will, Al bequeathed the ownership of the Hendrix Companies to family members other than Leon Hendrix.[4]

## III.   DEFENDANTS' ASSOCIATION WITH PITSICALIS

32.     Over the years, since at least July 2008, Defendant Karl Ferris associated himself with Andrew Pitsicalis, Rockin Artwork and Purple Haze

---

[4] Leon Hendrix challenged Al's Last Will in order to share, inter alia, in the intellectual property rights relating to Jimi Hendrix.  In 2004, the Court denied that challenge, finding that neither Leon nor his children had any claim to the Jimi Hendrix rights owned by the Jimi Hendrix Estate.  Affirmed *In re Estate of Hendrix,* 134 Wash. App. 1007 (2006).

Properties (the "Pitsicalis Parties") – even being represented by their long-time attorney, Thomas Osinski, Esq.

33.     Thus, Ferris and Optive Marketing, Inc. ("Optive") have aligned themselves with third parties who have hijacked and infringed Plaintiffs' trademarks. Federal courts have repeatedly prohibited and enjoined the unlawful activities of the Pitsicalis Parties.  Ignoring those prohibitions, in or about 2015 Ferris and Optive embarked on their own campaign of infringements of Plaintiffs' trademarks through the creation, development, licensing, manufacturing, promotion, advertising and sale of t-shirts and other products.

A.     **2008 INJUNCTION AGAINST LEON AND PITSICALIS**

34.     In September 2005, Leon Hendrix, Craig Dieffenbach ("Dieffenbach"), and others, including Andrew Pitsicalis, began operating Electric Hendrix, LLC for the primary purpose of marketing vodka and merchandise, and promoting its goods and services using a Jimi Hendrix "signature" mark, and Jimi Hendrix "headshot" mark.



35.    In 2007, Plaintiffs commenced an action against Dieffenbach, Leon, their companies and employees for infringement of their trademarks.[5]  In 2008, the Court concluded that the Electric Hendrix marks infringed on the Plaintiffs' marks:

**EXPERIENCE HENDRIX**                    **ELECTRIC HENDRIX**

        

The Court prohibited Electric Hendrix and its employees, including Pitsicalis, from using the Plaintiffs' "headshot" logo or any similar mark, brand, or logo, and Jimi Hendrix signature or any similar signature in the sale of alcohol or other goods.



---

[5] *Experience Hendrix, L.L.C. et al v. Electric Hendrix, LLC*, et al., Case No. C07-338 TSZ, U.S.D.C., W.D. Wash. (2007).  Attorney Thomas Osinski represented Dieffenbach in the later stages of the case.

B.    2015 INJUNCTION AGAINST PITSICALIS

36.    In 2008, Andrew Pitsicalis began his own crass, unauthorized exploitation of Jimi Hendrix and Jimi Hendrix related marks. On or about February 25, 2008, Pitsicalis created HendrixLicensing.com, LTD, d/b/a HendrixArtwork.com and began to license and sell Jimi Hendrix merchandise.

37.    On March 5, 2009, the Plaintiffs commenced a suit against Pitsicalis and his various Hendrix-related companies.[6]   In that case, the Federal Court found that Andrew Pitsicalis, who "was formerly associated with Dieffenbach and Electric Hendrix, LLC," was "undisputedly aware of the prior suit between Experience and Dieffenbach."[7]  On May 8, 2015, that Court issued an amended permanent injunction against Pitsicalis, prohibiting him from using the following "guitar and headshot" logo or any similar mark, brand, or logo and from using the Jimi Hendrix signature or any similar signature in connection with the advertising and/or sale of posters, artwork, fine art prints, apparel, merchandise, memorabilia, and/or novelty items:

 

---

[6] *Experience Hendrix, et al v. Hendrixlicensing.com, LTD, et al*, Case No. C-09-0285 TSZ, U.S.D.C. W.D. Wash. (2009). Attorney Thomas Osinski represented Pitsicalis and his companies in that as well as in subsequent litigation.
[7] *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F.Supp.2d 1122, 1128 (W.D. Wash. 2011).

C.     **2016 INJUNCTION AGAINST LEON HENDRIX**

38.     In 2014, Leon, Pitsicalis and Rockin' Artwork, LLC formed a business relationship with Tiger Paw Beverages for the purpose of creating a line of alcoholic beverages using the Hendrix Marks and other copyrights - the same activity the Federal Court had enjoined in 2008.

39.     On January 27, 2017 the United States District Court for the Southern District of Georgia issued a Permanent Injunction prohibiting the Tiger Paw Beverages Defendant from using any of the Hendrix Marks, copyrights, or name, signature or likeness for any trademark or endorsement purposes whatsoever.

40.     On July 21, 2016 same court entered a preliminary injunction whereby the Court enjoined all defendants:

>          (1)     from using the word "jimi" in the names of their websites, social media profiles, or other online platforms that are used to distribute, sell, or otherwise promote Purple Haze Liqueur;
>
>          (2)     from manufacturing, distributing, selling, or promoting any bottle of Purple Haze Liqueur that has the web address www.jimipurplehaze.com printed visibly thereupon; and
>
>          (3)     from displaying, on any of their materials, the Jimi Hendrix signature that is found in Exhibit 1 attached to this Order.

IV.     **FERRIS'S AND OPTIVE'S INFRINGEMENTS**

41.     Notwithstanding their knowledge of the above-referenced injunctions and prohibitions, Ferris and Optive adopted the playbook of the Pitsicalis Parties and

began licensing t-shirts which were substantially similar to uses designed by the Pitsicalis Parties which, designs had previously been the subject of prior litigations and injunctions of which the Defendants knew or should have known.

42. By falsely suggesting endorsement by Jimi Hendrix, the Jimi Hendrix Estate or the Hendrix Companies, the Defendants have unlawfully promoted, packaged, marketed, advertised, licensed, and sold their products (the "Infringing Products") using Plaintiffs' incontestable trademarks on t-shirts and other merchandise and marketing materials manufactured and sold by third parties, including but not limited to, Daydreamer American Classics, Inc., Recycled Karma Brands, LLC, Hold This Inc., and Fifth Sun.

43. The Infringing Products include, but are not limited to, the following infringements:

















44.   As can be readily seen by these images, the Defendants' uses of Plaintiffs' trademarks and the Defendants' unlawful actions are intentionally

designed to capitalize on the goodwill, recognition and fame associated with the Plaintiffs' Jimi Hendrix marks and rights. "Jimi" and "Hendrix" are integral and dominant parts of Plaintiffs' registered trademarks.  Those acts have tarnished and diluted the value of those marks by falsely associating the Plaintiffs with those Defendants' unauthorized sale of their Infringing Products.  By this lawsuit, the Plaintiffs seek to permanently stop the Defendants from infringing and misappropriating Plaintiffs' marks and goodwill, to disgorge all profits they have unlawfully made, and to obtain redress for the damage done to the Plaintiffs and their marks.

45.     Upon information and belief, these infringing products have been sold throughout the United States and within the State of New York since August, 2012.

## V.     DEFENDANTS' INFRINGING CONDUCT

### A.     The Defendants' Bad Faith and Acts of Tarnishment, Dilution, False Designation of Origin, and False Endorsement in the Marketing of the Infringing Products in Connection With the Hendrix Marks

46.     Defendants' actions as alleged herein constitute false designation of origin, affiliation or sponsorship in violation of 15 U.S.C. § 1125(a).

47.     Defendants' unauthorized use in commerce of indicia of Jimi Hendrix's identity and persona, including her name, signature and likeness, and/or the Hendrix Marks, constitutes a false designation of origin and a false association that wrongfully and falsely designates the services and products offered thereunder as

originating from Plaintiffs and/or Jimi Hendrix, or being associated, affiliated or connected with or approved or sponsored by Plaintiffs and/or Jimi Hendrix.

48.     Plaintiffs allege that the Defendants and third parties, who, in concert with the Defendants, are engaging in a scheme to infringe upon the Hendrix marks, trade off of the Hendrix Companies' goodwill, and unjustly enrich themselves by falsely indicating and suggesting the sponsorship, association, endorsement and/or affiliation with Plaintiffs, Jimi Hendrix and the Estate of Jimi Hendrix.

49.     The Defendants have infringed Plaintiffs' trademarks by, <u>inter alia</u>, developing, marketing and selling throughout Defendants lines of t-shirts which infringe upon the Hendrix Marks.

50.     These infringing products are all advertised and offered for sale through highly interactive online business outlets, including Internet Websites and Social Media accounts such as Facebook, Instagram and Twitter, which are all used to market, offer for sale, sell and/or ship infringing products in violation of Plaintiffs' rights.

## PLAINTIFFS' CLAIMS AGAINST DEFENDANTS

### <u>FIRST CAUSE OF ACTION</u>

**(False Association and Unfair Competition – 15 U.S.C. § 1125(a))**

51.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 50 above, as though fully set forth herein.

52.     As a direct and proximate result of the Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation, and goodwill. Defendants will continue, unless restrained, to conduct their business using indicia of Jimi Hendrix, including his name, signature and likeness, and the Hendrix Marks or the like confusingly similar to Jimi Hendrix's identity or persona or the Hendrix Marks, and will continue to cause irreparable damage to Plaintiffs.

53.     Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining the Defendants, their officers, agents, servants, licensees, and employees, and all persons acting in concert with Defendants, from engaging in further acts of false designation of origin, affiliation or sponsorship.

54.     Plaintiffs are further entitled to recover from Defendants the actual damages that they sustained and/or are likely to sustain as a result of Defendants' wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the monetary damages that they have suffered and/or are likely to sustain by reason of the Defendants' acts of false designation of origin, affiliation or association.

55.     Plaintiffs are further entitled to recover from the Defendants the gains, profits, and advantages that the Defendants' have obtained as a result of their wrongful acts. Plaintiffs are presently unable to ascertain the extent of the gains, profits, and advantages that the Defendants have realized by reason of their acts of false designation of origin, affiliation or association.

56.    Because of the willful nature of the Defendants' wrongful acts, Plaintiffs are entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

57.    Plaintiffs are also entitled to recover their attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117 and destruction of infringing articles pursuant to 15 U.S.C. § 1118.

## SECOND CAUSE OF ACTION
### (Trademark Infringement – 15 U.S.C. § 1114 and Common Law)

58.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 57, above, as though fully set forth herein.

59.    Defendants' have used in commerce, without Plaintiffs' permission, the Hendrix Marks in a manner that is likely to cause confusion with respect to the source and origin of Defendants' business and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship, or association of Plaintiffs with the Defendants and/or the Infringing Products.

60.    Defendants' acts constitute infringement of the Hendrix Marks in violation of 15 U.S.C. § 1114 and the common law.

61.    As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation, and goodwill. Defendants will continue to use, unless restrained, the Hendrix Marks or marks confusingly similar thereto and will cause irreparable damage to Plaintiffs. Plaintiffs have no adequate remedy at law and are entitled to an injunction restraining the Defendants, their officers, agents,

25

licensees, servants, and employees, and all persons acting in concert with Defendants, from engaging in further acts of infringement.

62.     Plaintiffs are further entitled to recover from the Defendants the actual damages that they sustained and/or are likely to sustain as a result of Defendants' infringing acts. Plaintiffs are presently unable to ascertain the full extent of the monetary damages that they have suffered and/or are likely to sustain by reason of Defendants' acts of infringement.

63.     Plaintiffs are further entitled to recover from the Defendants the gains, profits, and advantages that the Defendants have obtained as a result of their infringing acts. Plaintiffs are presently unable to ascertain the extent of the gains, profits, and advantages that the Defendants have realized by reason of their acts of infringement.

64.     Because of the willful nature of Defendants' infringement, Plaintiffs are entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

65.      Plaintiffs are also entitled to recover their attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117 and destruction of infringing articles pursuant to 15 U.S.C. § 1118.

## THIRD CAUSE OF ACTION
### (Dilution – 15 U.S.C.§ 1125(c) and N.Y. Gen. Bus. Law § 360-l)

66.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 65, above, as though fully set forth herein.

67.    The Hendrix Marks have acquired distinction and strong secondary meaning through extensive, continuous, and exclusive use of the Hendrix Marks, long before the Defendants began their unauthorized activities.

68.    The Hendrix Marks are famous and distinctive within the meaning of 15 U.S.C. §1125(c)(1) and N.Y. Gen. Bus. Law § 360-l.

69.    Defendants' unauthorized use of the Hendrix Marks has caused and is likely to cause dilution by blurring and dilution by tarnishment of the Hendrix Marks in violation of 15 U.S.C. §1125(c) and dilution to the distinctive quality of the Hendrix Marks in violation of N.Y. Gen. Bus. Law § 360-l.

70.    Defendants' acts complained of herein are likely to damage Plaintiffs irreparably. Plaintiffs have no adequate remedy at law for such wrongs and injuries. The damage to Plaintiffs includes harm to their trademarks, goodwill, and reputation that money cannot compensate. Plaintiffs are entitled to a preliminary and permanent injunction enjoining Defendants' use of the Hendrix Marks or any marks confusingly similar thereto or dilutive thereof in connection with the promotion, advertisement and sale of any goods or services offered or licensed by the Defendants.

71.    Plaintiffs are further entitled to recover from the Defendants the actual damages sustained by Plaintiffs as a result of the Defendants' wrongful acts. Plaintiffs are presently unable to ascertain the full extent of the monetary damages they have suffered by reason of Defendants' acts of dilution.

72.    Plaintiffs are further entitled to recover from the Defendants the gains, profits, and advantages the Defendants have obtained as a result of their wrongful

acts. Plaintiffs are presently unable to ascertain the extent of the gains, profits and advantages the Defendants have realized by reason of Defendants' acts of dilution.

73.     Because of the willful nature of Defendants' actions, Plaintiffs are entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

## FOURTH CAUSE OF ACTION
### (Common Law Unfair Competition)

74.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 73, above, as though fully set forth herein.

75.     By reason of the foregoing, Defendants have been, and are, engaged in acts of unfair competition in violation of the common law.

76.     Upon information and belief, by virtue of Defendants' unlawful conduct, the Defendants have made or will make substantial profits and gains to which they are not in law or equity entitled.

77.     Defendants' aforesaid conduct has caused Plaintiffs irreparable harm and, unless enjoined, will continue to cause Plaintiffs irreparable harm, for which Plaintiffs have no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### (Deceptive Business Practices – N.Y. Gen. Bus. Law § 349)

78.     Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 77, above, as though fully set forth herein.

79.     By reason of the foregoing, Defendants' conduct constitutes

deceptive acts and practices in the conduct of business in New York in violation of Section 349 of the New York General Business Law.

80.     Upon information and belief, by virtue of Defendants' unlawful conduct, the Defendants have made or will make substantial profits and gains to which they are not in law or equity entitled.

81.     Defendants' aforesaid conduct has caused Plaintiffs irreparable harm and, unless enjoined, will continue to cause Plaintiffs irreparable harm, for which Plaintiffs have no adequate remedy at law.

82.     As a direct and proximate result of Defendants' deceptive business acts and practices, Plaintiffs have suffered, and will continue to suffer, monetary damages and irreparable injury.

83.     Based on the intentional, willful and knowing nature of the Defendants' actions, Plaintiffs are entitled to recover treble damages and reasonable attorneys' fees and costs incurred in connection with this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

1.     On the First, Second, Third, Fourth and Fifth Causes of Action of this Complaint an award of equitable relief and monetary relief, jointly and severally, against Defendants as follows:

        a.  That Defendants, their agents, servants, employees, attorneys, representatives, successors and assigns and all persons, firms, or

corporations in active concert or participation with Defendants be enjoined and restrained permanently from:

   i.   directly or indirectly infringing the Hendrix Marks in any manner, including, but not limited to distributing, advertising, selling, or offering for sale any goods or services (inclusive of the Infringing Product at issue in this suit) which are confusingly similar to the Hendrix Marks;

   ii.   using any mark, trade name, logo or design that tends falsely to represent, or is likely to confuse, mislead, or deceive purchasers, customers, or members of the public, that goods and services offered by Defendants originate from Plaintiffs, or that said goods or services have been sponsored, approved, or licensed by or associated with Jimi Hendrix or Plaintiffs or are in some way connected or affiliated with Plaintiffs;

   iii.   engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, members or customers, or other members of the public to believe that the actions of Defendant' are connected with Plaintiffs, are sponsored, approved, or licensed by Plaintiffs, or are in some way connected or affiliated with Jimi Hendrix or Plaintiffs;

      iv.  otherwise competing unfairly with Plaintiffs in any manner including, but not limited to, interfering in any manner with any of Plaintiffs' licensees or their licensing agent; and

      v.  diluting and infringing Plaintiffs' marks and damaging Plaintiffs' goodwill, reputation, and business.

b.  That Defendants be required to deliver for destruction to Plaintiffs' counsel, at the New York address set forth in the signature block below, all goods in their possession or under their control, including Defendants' Infringing Products, and any promotional and advertising material related thereto, and any other unauthorized items which infringe the Hendrix Marks;

c.  That Defendants be required to account for and to pay to Plaintiffs all of Defendants' profits and all of Plaintiffs' damages resulting from Defendants' foregoing infringing and unfair activities;

d.  That Plaintiffs recover from Defendants their costs of this action, reasonable attorneys' fees, and prejudgment interest;

e.  That Plaintiffs recover from Defendants their actual and compensatory damages resulting from Defendants' conduct in an amount to be proved at trial;

f.  That Plaintiffs recover from Defendants treble and punitive damages; and

g.  That Plaintiffs have judgment against Defendants for Plaintiffs' reasonable costs and attorneys' fees in accordance with 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law § 360-m and other applicable laws.

2.  All claims, costs and reasonable attorneys' fees; and

3.  Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury in this matter.

Dated:      New York, New York
            August 29, 2018

                           **SHUKAT ARROW HAFER WEBER &
                           HERBSMAN, LLP**


                           By:     */s/ Dorothy M. Weber*
                                   Dorothy M. Weber (DW4734)
                                   dorothy@musiclaw.com
                                   494 Eighth Avenue, Suite 600
                                   New York, NY 10001
                                   T: 212-245-4580
                                   F: 212-956-6471
                                   *Attorneys for Plaintiffs*